UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCISCAN HEALTH DYER CAMPUS<br>24 Joliet Street<br>Dyer, IN 46311<br><br>FRANCISCAN HEALTH LAFAYETTE EAST<br>1701 South Creasy Lane<br>Lafayette, IN 47905<br><br>FRANCISCAN HEALTH INDIANAPOLIS<br>8111 South Emerson Avenue<br>Indianapolis, IN 46237<br><br>       vs.<br><br>ALEX M. AZAR, II<br>Secretary of the United States Department of Health and Human Services, Room 700-E<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>       Defendant. | Case No. ___20-3497___ |

## COMPLAINT

Plaintiffs (Hospitals) sue Defendant, Alex M. Azar II, in his official capacity as Secretary of the United States Department of Health and Human Services (HHS) and seek judicial review of dismissals of their appeals before the Provider Reimbursement Review Board (PRRB).

## STATEMENT OF THE CASE

1.    This action is an appeal of a final determination by the PRRB. 42 U.S.C. § 1395oo(f)(1).

2. The Hospitals appeal the PRRB's dismissal of their reimbursement appeals for lack of jurisdiction. The PRRB wrongly concluded that Congress had precluded administrative review of CMS's action. *See* 42 U.S.C. § 1395ww(r)(3) ("the Review Preclusion Statute"). The Hospitals seek judicial review of the PRRB's dismissal because it erred in finding that Congress precluded any administrative or judicial review of the challenged reimbursement.

3. The PRRB's analysis was flawed. Though Congress has precluded review of the estimates underlying the specific reimbursement at issue, it has not precluded review to ensure that CMS lawfully implements such changes under the Medicare Act and the Administrative Procedures Act. 42 U.S.C. § 1395; 5 U.S.C. § 551.

4. CMS violated the Medicare Act when it failed to submit the policy change impacting the Hospitals' reimbursement through audits to Notice-and-Comment Rulemaking. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019).

5. The Medicare Act requires CMS to promulgate properly any policy—including audits—which may impact a hospital's payment through Notice-and-Comment Rulemaking. *Id.* at 1809. But here, CMS created a new policy to adjust the Hospitals' reimbursements without following the required Notice-and-Comment. Because CMS failed to promulgate properly the audit policy—the audit policy is procedurally unlawful under the Medicare Act and its use to alter Hospitals' payments was impermissible.

6. CMS also violated the APA in two ways. First, CMS implemented audits applying the changed policy in an arbitrary and capricious manner, harming the Hospitals. Second, CMS's reliance on a procedurally improper policy to change hospital reimbursement was contrary to the law.

7. The APA requires the Secretary to refrain from acting arbitrarily or capriciously when implementing CMS's policies. But the Secretary implemented a new reimbursement policy through audits that lacked standard auditing principles to calculate the Hospitals' Uncompensated Care Disproportionate Share Hospital (UC DSH) adjustments. The lack of standard principles resulted in disparities, inconsistencies, and errors that negatively impacted many hospitals' UC DSH payments. Such arbitrary and capricious implementation of the new policy violated the APA.

8. The APA requires the Secretary to act consistently with the law. When CMS used the improper audits as the foundation for adjustments to the Hospitals' UC DSH payments for Federal Fiscal Year 2020, he acted inconsistently. Thus, the FFY 2020 UC DSH adjustments returned to Hospitals in their Notices of Program Reimbursement are contrary to the law and in violation of the APA.

9. The PRRB's jurisdictional dismissals are incorrect because the Preclusion Statute does not apply to the Hospitals' challenges. The Preclusion Statute only applies to challenges of the substantive calculations made by CMS; not challenges to whether CMS followed the law. Here, the Hospitals challenge the legality of CMS's adjustments because they were procedural violations of the Medicare Act and violated the APA.

10. The Hospitals thus request the Court:

- vacate the PRRB's jurisdictional dismissal;

- vacate all UC DSH payments made - pursuant to the 2019 Final Rule – that incorporated or relied upon the procedurally unlawful S-10 audits;

- order the PRRB to exercise jurisdiction over the Hospitals' appeals; and

- order the Secretary to recalculate the Hospitals' UC DSH payments and pay the amounts owed in addition to the required statutory interest.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action and the parties under the Medicare Act, the Administrative Procedure Act, or both. 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

12. The Secretary has a non-discretionary duty to promulgate all statements of policy that govern the payment for services through Notice-and-Comment Rulemaking. This Court has statutory jurisdiction to compel the Secretary to do so. 28 U.S.C. § 1361.

13. Venue is proper in this judicial district. 28 U.S.C. § 1391(e); 42 U.S.C. § 1395oo(f)(1).

## PARTIES

14. The Hospitals were, at all times relevant to this action, qualified as Medicare-participating, general acute care hospital providers in the federal Medicare program under the Medicare Act.

15. The Hospitals appealed the Secretary's action before the PRRB based on Notices of Program Reimbursement that adjusted each Hospital's UC DSH reimbursement.

16. Defendant Alex M. Azar, II is the Secretary of HHS. The Secretary delegated his responsibilities to administer the Medicare program to CMS.

## STATUTORY AND REGULATORY BACKGROUND

### A. The Medicare Act and Disproportionate Share Hospital Programs

17. The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease federally funded and administered

4

by the Secretary through CMS and its contractors. 42 U.S.C. § 1395c; 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

18. CMS implements the Medicare program, in part, through issuing official rulings, regulations in the Federal Register, manuals, and subregulatory guidance. *See* 42 C.F.R. § 401.108.

19. The Medicare Act mandates that any rule, requirement, or other statement of policy that affects payment for services be "promulgated by the Secretary" through Notice-and-Comment Rulemaking. 42 U.S.C. § 1395hh(a)); *Allina Health Servs.*, 139 S. Ct. at 1809. This includes any change that "is not a logical outgrowth of previous Notice-and-Comment Rulemaking." 41 U.S.C. § 1395hh(a)(4).

20. The Medicare program is divided into five parts: A, B, C, D, and E. Medicare Part A provides coverage and payment for inpatient hospital services on a fee-for-service basis. 42 U.S.C. § 1395c.

21. CMS pays Medicare Part A providers for covered services through Medicare Administrative Contractors (MACs) that are agents of the Secretary. Each Medicare-participating hospital is assigned to a MAC that determines the amount of Medicare Part A payments for the hospital under CMS instruction. 42 U.S.C. § 1395h.

22. The hospital inpatient prospective payment system (IPPS) reimburses hospitals for inpatient hospital operating costs. Costs are determined based on predetermined, nationally applicable rates linked to the diagnosis of a patient at the time of discharge from an inpatient stay. These payments are subject to adjustments, including the UC DSH adjustment. 42 U.S.C. § 1395ww(d)(5)(F).

**B. DSH Adjustments**

23. Hospitals that treat a disproportionately large number of low-income patients are entitled to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH adjustment increases Medicare payments for hospitals to account for the increased costs associated for treating low-income patients.

24. The Hospitals' DSH calculations were made using the proxy method. Each hospital's DSH adjustment and DSH payment is based on each hospital's Disproportionate Patient Percentage. 42 U.S.C. § 1395ww(d)(5)(F)(v); (vi).

25. The Disproportionate Patient Percentage is the sum of two fractions that capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). The sum of the fractions is a proxy to determine the number of low-income patients, rather than having CMS count the actual number of patients.

26. The Medicare/SSI Fraction is the percentage of a hospital's inpatients who are entitled both to Medicare Part A and Supplemental Security Income (SSI) benefits during their stay:

$$\frac{\textit{Medicare/SSI Days}}{\textit{Total Medicare Days}}$$

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

27. The Medicaid Fraction is the percentage of a hospital's inpatients "who were not entitled to benefits under [Medicare] Part A" but are "eligible for medical assistance" under a state plan during their stay:

6

$$\frac{\textit{Medicaid, Non-Medicare Days}}{\textit{Total Patient Days}}$$

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

### C. Uncompensated Care DSH Payments

28. Congress enacted the UC DSH payment system through the Affordable Care Act. 42 U.S.C. § 1395ww(r); 42 C.F.R. § 412.106(f)-(h). These payments expand a hospital's DSH payments to include uncompensated care provided to low-income patients.

29. Beginning with FFY 2014, a DSH hospital received two separate DSH Payments:

- **Traditional DSH payment:** 25% of the amount due the hospital under the historical DSH methodology; and

- **UC DSH payment:** 75% of CMS's estimate of the traditional DSH payment that would be made for the coming FFY.

30. CMS calculates the UC DSH payment for each DSH hospital based on three factors:

- **Factor 1**: 75% of CMS's estimate of the traditional DSH payment for the coming FFY.

- **Factor 2**: An adjustment for CMS's estimate of the percentage change in the national uninsured rate for "the most recent period for which data is available" versus a baseline uninsured rate for 2013, less a small statutory reduction.

- **Factor 3:** Each qualifying DSH hospital's uncompensated care as a percentage of the total uncompensated care for all qualifying DSH hospitals.

31. Factor 3 is the focus of this appeal and equals the amount of uncompensated care reported by a UC DSH hospital divided by the "aggregate amount of uncompensated care" for all UC DSH hospitals. 42 U.S.C. § 1395ww(r)(2)(C). Thus, if a hospital's

uncompensated care is understated by an audit, it will receive a reduced percentage of the "the aggregate amount of uncompensated care for all subsection (d) hospitals." 42 U.S.C. § 1395ww(r)(2)(C)(ii).

32. CMS calculates UC DSH payments before each FFY as part of its annual rulemaking. UC DSH payments for hospitals are posted on the IPPS website.

### D. The Review Preclusion Statute

33. Congress included the Review Preclusion Statute under the UC DSH payment system, limiting administrative or judicial review of "any estimate of the Secretary [or] any period selected by the Secretary" used to determine the three factors. 42 U.S.C. § 1395ww(r)(3).

34. Not included in the Review Preclusion Statute is any language allowing CMS to bypass the procedural and substantive requirements of the Medicare Act or the APA—including Notice-and-Comment Rulemaking.

### E. PRRB Review and Judicial Review of PRRB Decisions

35. The PRRB is an administrative tribunal appointed by the Secretary. 42 U.S.C. § 1395oo(h). Each of the appointed members of the PRRB must be "knowledgeable in the field of payment to providers of services" under the Medicare program. *Id.*

36. A hospital may appeal to the PRRB if the hospital is dissatisfied with the Secretary's final determination on the amount of payment the hospital receives. 42 U.S.C. § 1395oo(a)(1)(A)(i).

37. A hospital may take an appeal to the PRRB individually or pursue a group appeal of an issue that is common to two or more hospitals when the amount in controversy is at least $50,000. 42 U.S.C. § 1395oo(a), (b); 42 C.F.R. § 405.1835; 405.1837.

38. A PRRB decision determination that it lacks authority to decide a question of law is "a final decision and not subject to review by the Secretary."42 U.S.C. § 1395oo(f)(1).

39. Hospitals have the right to obtain judicial review of that determination by suing in this Court within 60 days of the PRRB's determination. *Id.*

40. Interest is to be awarded in favor of a hospital that prevails in such an action. 42 U.S.C. § 1395oo(f).

### F. The Administrative Procedure Act

41. Under the APA, a reviewing court must invalidate an unlawful agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; is beyond the agency's authority; or is procedurally improper. 5 U.S.C. § 706(2)(A), (C), (D).

42. The APA dictates procedural requirements for rulemaking, specifically requiring the agency to provide notice of proposed rules, to allow interested parties to comment on the proposed rules, and to consider the comments returned. 5 U.S.C. § 553.

### G. The Medicare Act's Notice-and-Comment Rulemaking requirement is independent of the APA's similar requirement.

43. The Supreme Court has held that the Medicare Act independently requires "notice and [a] 60-day comment period – for any rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services … under [Medicare]." *Allina Health Servs.*, 139 S. Ct. at 1809 (cleaned up).

44. Though similar to the APA's requirements, the Medicare Act's Notice-and-Comment requirement places additional procedural requirements on CMS.

### H. CMS Failed to follow the Medicare Act or APA's Notice-and-Comment Requirement when it implemented Worksheet S-10 audits.

45. CMS's audit protocol, as used by the MACs, was never submitted through Notice-and-Comment rulemaking as required by the Medicare Act.

46. CMS S-10 audits lacked standard audit protocols and were thus conducted by CMS—through its MACs—in an arbitrary and capricious manner. This subjected different hospitals within a MAC to differing adjustments based on the same facts.

47. CMS required its MACs to change the values contained on Worksheet S-10 for hospitals eligible for UC DSH payments. For example:

- Some audits led to disallowances and negative adjustments for bad debt and charity-care charges.

- Some audits led to disallowances of charity discounts on copayments under a hospital's financial assistance policy.

- CMS never published notice of these potential changes, through Notice-and-Comment, to Hospitals.

48. The changes to the Worksheets S-10 reduced or otherwise altered the amounts of payments made by CMS to Hospitals.

### FACTUAL AND PROCEDURAL BACKGROUND

### I. The Hospitals Timely Appealed to the PRRB and Are Properly Before This Court.

49. After the close of each fiscal year, a hospital must file a cost report with its designated MAC. 42 C.F.R. §§ 413.20, 412.24.

50. The MACs audit the cost report and issue a determination, called a Notice of Program Reimbursement (NPR) that informs a hospital of the MAC's final determination as for the amount of reimbursement the hospital will receive. 42 C.F.R. § 405.1803. Issuance of an NPR is a final agency decision. *Id.*

51. The Hospitals timely filed their appeals before the PRRB challenging the MACs' implementation of the improper audit protocol within 180 days of issuing their NPRs or Revised NPRs.

52. The Hospitals appealed CMS's improper procedure surrounding the Worksheet S-10 audits under the Medicare Act and its unlawful application of the audits under the APA. These audits substantially impacted the FFY 2020 UC DSH payments to Hospitals.

53. On October 2, 2020, the Board incorrectly found that it lacked jurisdiction because it determined that administrative review of the UC DSH calculation is barred by statute and regulation.

54. The Hospitals have timely sued for review by filing their appeals within 60 days of that final determination. 42 U.S.C. § 1395oo(f)(1).

### J. The Review Preclusion Statute does not foreclose judicial review of CMS's procedurally unlawful propagation of substantive law.

55. The Review Preclusion Statute does not preclude review of CMS's procedurally unlawful policy of using unpublished, audit protocols to affect UC DSH payments to Hospitals.

56. The Hospitals do not challenge CMS's use of an "estimate," its underlying or intertwined data, or a "time period." Instead, the Hospitals challenge CMS's a procedurally unlawful audit protocol.

57. CMS violated the Medicare Act by requiring the MACs to conduct Worksheet S-10 audits. CMS never published this audit protocol through Notice-and-Comment. Pursuant to this audit requirement, the MACs changed the Hospitals'

Worksheets S-10. The MAC's changes substantially impacted the UC DSH payments the Hospitals received.

58. Remand to the PRRB would be futile; the PRRB has previously stated that it lacks the authority to grant the requested relief. DSH Regional Medical Center, Case No. 14-2097 (PRRB December 10, 2015) (Board denying hospital's request for Expedited Judicial Review).

59. Additionally, reversal and remand to the Secretary would merely result in this matter being passed back to the PRRB, which would order expedited judicial review. This Court must address this issue on the merits to avoid "convert[ing] judicial review of agency action into a ping-pong game." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 776 n. 6 (1969) (plurality opinion).

**BASES OF APPEAL**

**Count I: Violation of the Medicare Act**

60. Plaintiffs incorporate the allegations from all previous paragraphs as if set forth fully above.

61. The Medicare Act requires the Secretary to subject any policies impacting a provider's payment to Notice-and-Comment Rulemaking. 42 U.S.C. § 1395); *Allina Health Servs.*, 139 S. Ct. at 1809.

62. The S-10 Audit protocol was such a policy but was not subjected to Notice-and-Comment Rulemaking.

63. The adjustments thus violated the Medicare Act.

64. The unlawful S-10 Audit results were returned to the Hospitals.

65. The PRRB's dismissal of the Hospitals' actions was incorrect because nothing in the Review Preclusion Statute exempts the Secretary from adhering to the Medicare Act or precludes the PRRB or a court from reviewing such procedurally unlawful agency action.

## Count II: Violations of the APA

66. The Plaintiffs incorporate the allegations from all previous paragraphs as if set forth fully here.

67. The Secretary cannot bypass his obligations under the APA to implement the Medicare Act in accordance with the law or to implement CMS policies in neither an arbitrary or capricious manner. 5 U.S.C. § 706(2). The Secretary violated the APA by doing both.

68. First, the 2015 Worksheet S-10 Audits are procedurally improper under the Medicare Act and the APA because their protocol:

- was not the logical outgrowth of any policy presented in the FFY 2020 IPPS Proposed Rule or any other earlier proposed rule;
- was not adopted as a regulation through Notice-and-Comment rulemaking; and
- deviated from long-standing agency policy without explanation or justification.

69. The Secretary's inclusion of the S-10 Audits in the adjustments that reduced the Hospitals' UC DSH payments is thus contrary to the law. By acting contrary to the law, the Secretary violated the APA.

70. Second, the Secretary's implementation and application of the S-10 Audits was arbitrary and capricious.

71. The S-10 Audits were performed without standard measures or metrics. The lack of standards created disparate, conflicting, and unpredictable results for the Hospitals—including negatively impacting the UC DSH payments for the Hospitals.

72. Moreover, the Secretary's inclusion of an improperly created S-10 Audits was itself arbitrary and capricious.

73. The PRRB's dismissal of the Hospitals' actions was incorrect because nothing in the Review Preclusion Statute exempts the Secretary from adhering to the Medicare Act and APA's requirements—nor precludes the review of such *ultra vires* actions.

## REQUEST FOR RELIEF

**Therefore**, the Hospitals request an Order:

1. Declaring invalid and setting aside the final decisions precluding administrative and judicial review of the Plaintiff Hospitals' appeals relating to their UC DSH payments for FFY 2020;

2. Declaring invalid the unlawful audit protocol never published through Notice-and-Comment Rulemaking;

3. Requiring the Secretary to recalculate the Hospitals' UC DSH payments without reliance on any changes made as a result of the unlawful audit protocol;

4. Requiring the Secretary to comply with the duty to promulgate all statements of policy that govern the payment for services through Notice-and-Comment Rulemaking;

5. Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals;

6. Awarding interest to Hospitals pursuant to 42 U.S.C. § 1395oo(f)(2); and

7. Such other relief as this Court may consider appropriate.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

/s/Andrew B. Howk
Andrew B. Howk, Attorney No. IN0005
N. Kent Smith, Attorney No. IN177749
Lauren N. Rodriguez, Attorney No. IN0006
500 North Meridian Street, Suite 400
Indianapolis, IN  46204-1293
Ph:  (317) 429-3607
Fax: (317) 633-4878
Email:  ahowk@hallrender.com
*Attorneys for Plaintiffs*